1  John K. Buche (CA Bar No. 239477)
2  Byron Ma (CA Bar No. 299706)
   BUCHE & ASSOCIATES, P.C.
3  875 Prospect St., Suite 305
   La Jolla, CA 92037
4  Tel.: (858) 459-9111
5  Fax: (858) 430-2426
   E-mail: jbuche@buchelaw.com
6  E-mail: bma@buchelaw.com
7
   *Attorneys for Plaintiffs*
8

9              **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF CALIFORNIA**
10                    **FRESNO DIVISION**

11 | JOANNE KNUPP, individual, and as | Civil Action No.:
12 | plaintiff's mother and guardian on behalf |
   | of minor child, L.K. | **PLAINTIFFS' ORIGINAL COMPLAINT**
13 | | **FOR DAMAGES AND INJUNCTION:**
14 |                      Plaintiffs, |
15 |      v. | (1) **PRODUCTS LIABILITY-**
   | | **NEGLIGENCE;**
16 | Amazon.com Services, LLC | (2) **STRICT PRODUCTS LIABILITY-**
17 | ("AMAZON"), is a Delaware limited | **DESIGN AND MANUFACTUING**
   | liability company; and DOES 1-50, | **DEFECT;**
18 | inclusive. | (3) **STRICT PRODUCTS LIABILITY-**
19 | | **FAILURE TO WARN;**
   | | (4) **BREACH OF IMPLIED**
20 |                      Defendants. | **WARRANTIES;**
21 | | (5) **NEGLIGENT UNDERTAKING;**
   | | **AND,**
22 | | (6) **INFLICTION OF EMOTIONAL**
   | | **DISTRESS**
23 |
24 | | **JURY TRIAL DEMANDED**
25
26
27
28

                           1
                     COMPLAINT

COME NOW the PLAINTIFFS Joanne Knupp, individually, and as guardian on behalf of her minor child L. K. (collectively "PLAINTIFFS"), and complain against the above-named DEFENDANT and for causes of action against the DEFENDANT, alleges as follows:

## I.    INTRODUCTION

1.    L. K. ("LK") is a 21-month-old child who was seriously injured after she ingested a button battery that fell out of a wireless color-changing-LED light remote.  LK ingested the battery on or around February 16, 2023, and has experienced extreme pain and suffering as a result.

2.    "Button batteries" are small round batteries that power a variety of electronic devices. The little silver colored batteries are typically lithium-ion, and they are tremendous swallowing hazards to small children.  Little children are particularly vulnerable because they put things in their mouth, and button batteries can get stuck in their esophagus.  An electrical current can form in the body where the battery is lodged, and hydroxide, an alkaline chemical surrounds the battery and can cause tissue burns.  This was the type of battery swallowed by LK.

3.    The damage from the battery was so severe to LK's young body that she has been forced to go through fourteen surgeries so far, to remove the button battery and address damage to her organs.  The button battery was lodged in the esophagus at the level of the thoracic inlet.  The battery burned through her esophagus causing a tracheoesophageal fistula. LK had tissue damage with prolonged risk of catastrophic bleeding since a fistula had formed close to the carotid artery.  LK was transferred to Stanford Children's Hospital for the majority of her care.  In addition to the major surgeries, LK has suffered a variety of traumatic diagnostic procedures, sedated CT scans, bronchoscopies, endoscopies, and intubations.  LK's condition required round-the-clock care.  She was fed through a tube for more than three months, and too young to comprehend why all this was happening to her, and why she was suffering so much pain.  LK suffered tremendously having to endure long-term placement of peripherally inserted central catheters ("PICC" lines), and a constant flow of drugs for pain, anxiety, and to reduce enhanced risks of infection.

COMPLAINT

4.     The product in question was a wireless remote for color changing "fairy lights" sold under the Amazon "Homemory" brand.  This product was unreasonably dangerous to consumers, and this is a product liability action to address the dangers.  The injury in question did not need to happen, and it would not have happened if the product was manufactured, marketed, and sold in a manner that was safe.  PLAINTIFS, through this lawsuit, also seek to prevent such catastrophes to other unsuspecting parents and innocent children. Plaintiffs want to enjoin the sales of dangerous products like the ones that hurt LK, and they seek warnings to others about defects.

5.     The horrendous dangers posed to young children by easily accessible lithium button batteries have been well documented in recent years.  They have been noted by consumer protection groups, physicians, the media, and even some elements of the electronics industry, who have lobbied for alternative designs to prevent more children from being injured.  There are industry standards for manufacturers and sellers to protect compartments that contain button batteries. But if safer alternatives are ignored and unreasonably dangerous products are recklessly thrust into commerce, where they fall into the hands of innocent children, those safety standards and recommendations are meaningless to prevent foreseeable harm.  Also, "planned obsolescence" is unacceptable when it comes to the safety related features of a product.  If a product's safety features are designed or manufactured in a manner that the safety components will fail in short order with ordinary use, those products are defective and unreasonably dangerous.

6.     This lawsuit is based on the design defects, manufacturing defects, negligence, failures to warn, and breaches of warranties that led to the serious injury of a small child.

## II.    **PARTIES**

7.     Plaintiffs are Joanne Knupp, individually as parent, and as the representative of and her minor daughter, L. K. (collectively "PLAINTIFFS").  The PLAINTIFFS are residents of Fresno, California.

8.     Defendant Amazon.com Services, LLC ("AMAZON" or "DEFENDANT"), is a Delaware limited liability company, with a principal address at 410 Terry Ave N., Seattle,

COMPLAINT

Washington 98109. The registered agent for service of process is The Prentice-Hall Corporation System, Inc. (C0257078), 251 Little Falls Drive, Wilmington, DE 19808, but with identified registered address for service of process in California being 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

### III.    JURISDICTION AND VENUE

9.    This Court has jurisdiction because of diversity between the parties under 28 U.S.C. § 1332(a). The Plaintiffs and Defendants have complete diversity of citizenship at the time of filing and the dispute far exceeds $75,000 in controversy, exclusive of interest, punitive damages, attorney fees or other litigation costs.

10.    Venue is proper in this Court under 28 U.S.C. §1391(b)(1)(d). Defendants conduct substantial and extensive business in the State of California, and in this federal judicial district, and are also believed to have imported, promoted, and distributed defective products in California, and in this district; therefore, they are subject to the Court's personal jurisdiction in this district, and accordingly reside in this district for venue purposes. A substantial part of the events and omissions that comprise the basis of this lawsuit occurred in this district, including many of the emergency medical procedures that were necessary to save LK's life, and the pain and suffering by LK and her mother. Moreover, on information and belief, a substantial number of persons who may be similarly situated, or subject to the harms of this defective product live in this district so that jurisdiction over the Defendant is appropriate.

### IV.    GENERAL FACTS

11.    On or about February 16, 2023, baby LK swallowed a button battery. The button battery fell out of a "Homemory" brand wireless remote for "fairy lights," Model Number HXD6MT2QCYK (hereinafter "Product" or "Defective Product"), which was marketed, sold, and delivered and sold by Amazon to PLAINTIFFS. The Defective Product is depicted here in a photo from the AMAZON listing:

1
2
3
4
5
6
7
8
9



10    12.    The button battery in question fell out of the remote because the sliding door to
11  the remote's sliding battery access cover had inadequate safety precautions to prevent the
12  access cover from falling open.  Although some instructions are included on the back of the
13  remote that suggest the existence of safety features, in reality, they failed to function entirely
14  because they did not and would not keep the battery secure in the remote and out of the hands
15  of small children.  Notably, opening the actual remote does not require a two-step method of
16  opening the battery access cover; a single finger pulling the access cover easily slides it open
17  to expose and release the battery.

18
19
20
21
22
23
24



25
26
27
28

COMPLAINT



13.    As can be seen, the remote has a "drawer" battery compartment which readily slides out from the remote's base to expose the dangerous button battery.  The plastic "safety" mechanisms on this particular remote failed—and were woefully inadequate by design and manufacture because they were not strong enough to withstand normal use, and to preserve the integrity of critical safety features.  By contrast, each of the light strings included a timer, powered by relatively harmless AA batteries, which required opening two separate snap closures to access the timer's interior.

14.    The Defective Product was sold in a package that included two remotes and two light strings, with both of the remotes containing a button battery, whose dangers are well known to those in the industry, and yet the products were also delivered without *any* instructions or warnings to consumers about either the dangers of button batteries themselves—much less of choking hazards generally; how to safely install button batteries in the remote; dangers of the remote; or the importance of keeping button batteries away from small children or animals.  There were no relevant warnings on the remotes, the included instructions, or on the batteries about the dangers of button batteries.  The only mention of the batteries other than the improper opening instructions on the back of the remote said: "Please remove the plastic insulating film at the button of the remote before using it."

15.    The button battery that fell out of the remote was a CR2032 lithium-ion type battery.  There were no warnings, tabs, or stickers on or with the batteries about the dangers of ingestion, or the hazards to children.

16.    The Defective Product was featured, located, and purchased on Amazon.com. The Defective Product was placed in PLAINTIFF's Amazon "cart" and ordered through an

COMPLAINT

Amazon Prime account on January 10, 2023, Order #111-9685848-0609868. The product was $20.58. It was paid to AMAZON using an AMAZON prime account, an AMAZON receipt was given, AMAZON tracking was employed, and it was delivered directly to the PLAINTIFFS' residence. AMAZON charged for the purchase and AMAZON received the payment. The Defective Product was packaged in AMAZON boxes and labeled with AMAZON Prime packaging materials. Through the process, all contacts were through AMAZON. It appears the order was filled through an AMAZON fulfilment center, and/or using AMAZON delivery trucks and drivers. On information and belief, the Defective Product was shipped from a location at an AMAZON warehouse in the district.

17. On information and belief, AMAZON routinely sends out email blasts advertising the Defective Product to prospective consumers who may have viewed it online, so it is involved in marketing and directly selling to consumers of the specific Defective Products.

18. On information and belief, the "Homemory" brand is used for a variety of products that Amazon markets, sell and distributes on its platform in partnership, agency or joint venture through its Chinese supplier, Xiamen Global Selection Imp & Exp Co., Ltd., which appears to be a Chinese limited liability company who, in partnership, joint venture or agency with Amazon, operates some form of distribution enterprise for profit. On information and belief, Amazon stores these Defective Products in its warehouses, takes orders directly from consumers for the products; processes credit card payments and money from consumers directly; accepts any funds it receives for itself and any of its partners; and delivers the products in its Amazon boxes, and on Amazon trucks to the end consumer in California. Moreover, it appears that the Homemory brand is advertised on Amazon, and is often featured as a "Amazon's Choice" product for consumers.

19. Given AMAZON's role in our society in the distribution of goods, it is uniquely poised to prevent harms, and in this case, to take pro-active steps to suspend sales of defective products and warn unsuspecting consumers of the significant dangers posed by these Defective Products. The dangers of these Defective Products foreseeably extend to

AMAZON's customers, those who may encounter these products, and especially to small children and pets.

20.    Today, AMAZON enjoys great power in controlling the flow of products. While AMAZON has, at times, legally challenged its position as a "seller," the reality is that it has been handsomely rewarded for its sales of products.  In terms of pure sales volume, Amazon is a spectacular seller.  In the fourth quarter of 2020 alone, it publicly reported generating $125.56 billion in sales.    https://www.cnbc.com/2021/02/02/amazon-amzn-earnings-q4-2020.html.  With wealth and power of this magnitude, comes a responsibility and ability to help curb the spread of dangerous products to unsuspecting consumers.  It is a hope of the PLAINTIFFS and undersigned counsel that AMAZON will use its tremendous power to help families, like the Knupps, and protect them from egregiously unsafe products.

21.    The dangers of button batteries like these are well known to those in the manufacturing industry.  As early as May 12, 2012, on NBC's "The Today Show" there was an episode called *ER Visits Double as More Kids Swallow Batteries.*  According to the show, "Doctors say that the current from a three-volt battery can burn a hole in the esophagus in less than two hours."

22.    On May 24, 2010, *Pediatrics*, the official journal of the American Academy of Pediatrics, ran an article titled *Preventing Battery Ingestion: An Analysis of 8648 Cases*. The article warned that "manufacturers should redesign household products to secure the battery ccompartment, possibly requiring a tool to open it."[1]

23.    On September 22, 2011, NEMA[2] and CEA[3] came out publicly to raise industry standards requiring either a tool or multiple simultaneous maneuvers to access a lithium battery compartment.  A variety of economically feasible alternatives are available to the drawer design sold by DEFENDANTS.  For example, there are remotes that have required

---

[1] May 24, 2010, *Pediatrics*, Litovitz, Whitaker, & Clark, *Preventing Battery Ingestions: An Analysis of 8648 Cases.*
[2] The Association of Electrical and Medical Imaging Equipment Manufacturers.
[3] Consumer Electronic Association.

COMPLAINT

coins to unscrew compartments.    There are also simple screws that could secure compartments.  These precautions would cost mere cents.

24.    And yet, according to the National Safety Council's 2021 website, a consumer safety organization, every year, more than 2,800 kids are treated in emergency rooms after swallowing button batteries.  The number of injuries and deaths have increased nine-fold in the last decade.  https://www.nsc.org/home-safety/safety-topics/child-safety/button-batteries

25.    With respect to button batteries themselves, the U.S. Consumer Product Safety Commission recommends packages all feature "keep out of reach" pictograms, and safety tabs that need to be removed before using coin cell batteries that are stamped or etched on the battery.    https://www.cpsc.gov/s3fs-public/Session-5a-CPSC-Toys-China-Sept-2016-Miller-FINAL-Eng.pdf?6_cno.uKkl9OwtiZNsbdy2cIWR1nzDaW   Samples of what might be more acceptable warnings on batteries are shown below:



26.    Unfortunately, the DEFENDANT'S Defective Product(s) had none of those security measures in place when they were needed.

27.    There were no product inserts describing the harms of button batteries generally; there were no warnings on the batteries themselves; and there were no mechanisms in place to keep the battery from dropping out of the drawer mechanism of the Defective Product.  On information and belief, at no point in the design of the Defective Products were

they even subjected to drop tests, or stress tests to see whether the remotes would secure the button batteries.

28.    There are also at least four well known standards for product configurations with requirements to prevent access to button battery compartments by children, which include ASTM F963 Toy Safety; ASTM F2923-11 Children's Jewelry; UL 60065 Audio Video Equipment; and UL 4200A Products Incorporating Button Cell Batteries of Lithium of Similar Technologies.  These standards were not followed by DEFENDANT in preventing harms from button batteries.

29.    Commendably, the government of Australia, on December 18, 2020, passed legislation mandating safety standards, including adherence to UL Standards and SAI Global Standards for all product containing button batteries so battery compartments are secure. https://www.productsafety.gov.au/standards/button-coin-batteries#consumer-goods-products-containing-button-coin-batteries-safety-standard

30.    Unfortunately, the known safety standards were not followed in this case by DEFENDANT.  To design, manufacture, or sell products that are defective by these basic standards, or to turn a blind eye and ignore safety standards geared to protect small children, is recklessly and grossly negligent in that it shows extreme disregard of the likely harm to consumers.

31.    On or about February 16, 2023 LK is believed to have swallowed a button battery that fell out of the defective remote.

32.    LK vomited several times and had a persistent fever.  She continued to deteriorate, despite negative tests for COVID and the flu, until her mother drove LK to Valley Children's hospital on February 23.

33.    LK was lethargic with a dangerously high fever.  She began to cough up green specs, prompting a return trip to Valley Children's Hospital.

34.    LK had a chest X-Ray, identifying the button battery lodged in the upper part of her esophagus.  That night, on February 25, she underwent her first emergency surgery to remove the battery.  This was the first of many surgeries to come.

COMPLAINT

35.    After the surgery, LK had not recovered and was transferred to Stanford Children's Hospital to receive more specialized care.  At Stanford, LK underwent more surgeries to treat the damage the button battery caused to her small body.  LK remained in critical condition for over three months at the Stanford Children's Hospital as she fought to recover from the horrific injury caused by DEFENDANT'S negligence.  She will have problems and procedures for the rest of her life because of this incident.  As of this filing, baby LK will have another surgical procedure in August 2023.  Fortunately, LK survived her most acute injuries, although many other children have not survived button battery ingestion.  But, LK and her mother are still suffering and trying to recover from the enormous physical and psychological damage caused by the events of this lawsuit and they will certainly have physical and emotional scars from the trauma for many years to come.

## V.    **CAUSES OF ACTION**

### **FIRST CAUSE OF ACTION**

#### (*Negligent Product Liability*)

36.    PLAINTIFFS incorporate each and every allegation above as though fully set forth herein.

37.    DEFENDANT was engaged in the manufacture, design, testing, producing, inspecting, vending, distributing, introducing into interstate commerce, transporting in interstate commerce, advertising, selling, installing, assembling, or recommending for use to the general public the Defective Product.

38.    DEFENDANT owed duties of care to actual and potential customers and consumers with respect to the Product.  Such duties included but were not limited to: designing, formulating, manufacturing, distributing, selling, and providing the product in a fashion that was safe to consumers; packaging the Product safely so as to reasonably minimize the potential for injury; labeling the Product so as to reasonably warn consumers of the potential for danger; and reasonably applying knowledge and information from past incidents, complaints, studies, observations, reports, experience, or investigation to provide for the safety of consumers with respect to the products.

39.    DEFENDANT knew or should have known that if the Product was not properly and carefully manufactured, designed, tested, inspected, assembled, delivered, molded, labeled, warned, and signed prior to sale or distribution to consumers, it would, if used by any member of the general public, be a substantial factor in causing serious and permanent injury.

40.    DEFENDANT negligently and carelessly manufactured, designed, tested, failed to test, maintained, inspected, installed, assembled, delivered, molded, labeled, failed to warn, signed and sold the Product so that it was in a dangerous and defective condition and unsafe for the use and purposes for which it were intended.

41.    The condition of the Product was known to DEFENDANT, and each of them, or should have been discovered by and through the exercise of ordinary care and reasonable diligence, but was not disclosed or made known to purchasers or users of the Product, including PLAINTIFFS.

42.    The purchasers or users of the Product had no knowledge of the defective condition of the Product or of any danger in the use of the Product.

43.    On information and belief, in doing the acts alleged in this Complaint, DEFENDANT violated statutes, rules, standards, regulations or guidelines applicable to DEFENDANT'S conduct, including laws, regulation, or industry related standards relating to the manufacture, distribution, and sale of the Defective Product and similar items.

44.    The injuries and damages to PLAINTIFFS described more fully above were a direct and legal result of the violations of the statutes, rules, regulations, standards, and guidelines by DEFENDANT.

45.    The statutes, regulations, standards, and guidelines violated by DEFENDANT were drafted, written, and designed to prevent the type of incidents and injuries that occurred in this case, and PLAINTIFFS are among the class of persons the statutes, regulations, standards, and guidelines were designed to protect.

COMPLAINT

46.    As a direct and legal result of the negligence and carelessness of the DEFENDANT, and each of them, PLAINTIFFS suffered severe shock, injuries, and traumatic injury.

47.    PLAINTIFFS were also injured in their health, all to PLAINTIFFS' general damages in a sum which will be shown according to proof.

48.    As a further direct and legal result of the negligence and carelessness of the DEFENDANT, and each of them, PLAINTIFFS were compelled to and did incur expenses for medical care, hospitalization, nursing and attendant care and other incidental expenses and will have to incur additional like expenses in the future, all in amounts presently unknown to PLAINTIFFS.  PLAINTIFFS therefore ask leave of court either to amend this complaint so as to show the amount of the medical expenses, when ascertained, or to prove the amount at the time of trial.

49.    As a direct and legal result of the negligence and carelessness of the DEFENDANT, and each of them, PLAINTIFFS were damaged and disabled during her life (LK) and suffered immeasurably in terms of their emotional distress and continuing injuries, including severe emotional distress to her mother.

50.    The negligence and carelessness of the DEFENDANT was a substantial factor in causing the injuries and damages alleged above.

51.    PLAINTIFFS hereby incorporate by reference each and every allegation articulated above as though fully set forth herein.

## SECOND CAUSE OF ACTION

### (*Strict Product Liability—Design and Manufacturing Defect*)

52.    At the time that the Product left the control of DEFENDANT, the Product was dangerous and defective as a result of design and manufacture by DEFENDANT.

53.    At all times relevant, DEFENDANT knew and intended that the Product would be purchased, and used by members of the general public who would rely on DEFENDANT to safely design, manufacture, test, market and distribute the Product in a safe manner and to transmit relevant warnings about the Product.

54.    At the time of the incident giving rise to this Complaint, the Product was being used in a manner and fashion that was foreseeable by DEFENDANT, and in a manner in which the Product was intended to be used.

55.    DEFENDANT manufactured and designed the Product defectively or knew its manufacture or design was defective, or both, causing the Product to fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

56.    In addition, the risks inherent in the design of the Product, and especially the non-secured remote device far outweigh any benefits of that design.

57.    On information and belief, the Product is defective because it was not designed with durable enough materials such that safety mechanisms could survive their useful lifespan.

58.    On information and belief, the Product is defective because it was not designed with durable enough materials to retain resiliency of the safety mechanism at critical junctures.

59.    On information and belief, the Product is defective because it was not designed in a manner to withstand the environment in which it was likely to be found so that it was unreasonably dangerous for its intended users and for those who might come in contact with the product.  It was defective because, despite the enormous potential to cause injury or death, it was not designed or manufactured to be able to survive foreseeable use and/or misuse by consumers, children or innocent bystanders.

60.    On information and belief, the Product was defective by manufacture, because the material from which it was made failed at critical junctures which would have maintained operability of the safety mechanism.

61.    On information and belief, the Product was defective by manufacture by reason of poorly fashioned plastics, which were reasonably probable to fail in a situation where they should have been strong.

14

COMPLAINT

62.     On information and belief, the Product was defective by manufacture, because it was not suitably designed to withstand the environment in which it would be likely to operate, including around small children.

63.     On information and belief, the Product was unreasonably dangerous because a reasonable consumer would not have foreseen a fundamental safety mechanism failing far in advance of the likely useful lifespan of the product.

64.     On information and belief, the Product is defective because it is reasonable to anticipate small children and pets will come in contact with items such as remote controls.

65.     On information and belief, the Product is defective because it is reasonable to anticipate remote controls will be used in an environment where they are susceptible to being dropped and where they are susceptible to repeated use.

66.     On information and belief, the Product is defective because planned obsolescence is unacceptable in the realm of product safety mechanisms.

67.     On information and belief, the Product is defective because a variety of safer, reasonable alternatives would have been available to designers of the instant remote controls, including, but not limited to inexpensive screw mechanisms that are hard to break, hard to wear out, and hard to access by small children.

68.     On information and belief, the Product is defective because, to the extent the remote control manufacturers were inclined to use a two-step safety mechanism, it was only reasonable that they would ensure that both steps of the two-step process would be reliable, and it was reasonably foreseeable in a failure of any one of these two step safety mechanisms would have caused a catastrophic failure of the product and could have injured small children.

69.     On information and belief, the Product is defective because it is reasonably foreseeable button batteries can be consumed by small children which will cause catastrophic and sometimes deadly injury to their victims.

70.     On information and belief, the Product was defective by design, and/or manufacture, because the internal battery container failed to maintain proper tension on the battery to keep it in the drawer in the event the drawer opened.

COMPLAINT

71.    On information and belief, DEFENDANT had direct knowledge of the dangers posed to small children by button batteries, which have harmed other children they have sold products to, and yet they continue to sell products that are defective  and contain button batteries.

72.    As a legal result of the aforementioned dangerous and defective condition of the Product, PLAINTIFFS were injured and suffered damage as alleged.

## THIRD CAUSE OF ACTION

### (*Strict Product Liability—Failure to Warn of Defective Condition*)

73.    PLAINTIFFS incorporate each and every allegation above as though fully set forth herein.

74.    The Product was in a dangerous and defective condition when introduced into the stream of commerce by the DEFENDANT.  The Product was so defective that when used in a way that was reasonably foreseeable, the potential risks of the Product created a substantial danger to users of the Product and others and could and would cause those serious injuries.

75.    The Product had potential risks that were known or knowable by use of scientific knowledge available at the time of manufacture, distribution and sale of the Product.  DEFENDANT knew, or, in the exercise of reasonable care, should have known that the potential or inherent risks presented a substantial danger to users of the Product because defendant possessed special knowledge of the materials, design, character and assemblage of the Product.  PLAINTIFF and ordinary consumers would not recognize, nor have knowledge that the Product was dangerous and defective.

76.    On information and belief, the Product was defective by failure to warn on multiple occasions, because there were no warnings of the dangers of button batteries on the remote control itself, on the button battery, or with any of the literature that was mailed with the product, which information and warnings might have informed parents, and would be users of the product of the extreme dangers of the button battery products to small children from ingestion.

77.    Although possessed of special knowledge of the potential risks and substantial danger to users of the Product and others, defendants failed to warn or instruct of the potential risks and dangerous and defective conditions of the Product.  DEFENDANT failed to provide inserts or instructions warning of the dangers that a button battery that fell out of the remote could injure or kill a child that ingested the battery.  The batteries themselves failed to feature any meaningful warnings, stickers, or etchings that might have suggested the danger that the batteries might be swallowed by children, much less the severe harm that was likely to occur if that should happen.

78.    PLAINTIFFS were harmed and suffered the injuries and damages alleged as a result of DEFENDANT'S failure to warn.  The lack of proper warning or instructions was a substantial factor in causing PLAINTIFFS' harm.

## FOURTH CAUSE OF ACTION

### (*Breach of Implied Warranty*)

79.    PLAINTIFFS incorporate each and every allegation above as though fully set forth herein.

80.    At relevant times herein, DEFENDANT marketed, manufactured, promoted, distributed, imported, or sold the Product for use by the public at large, including the PLAINTIFFS.

81.    DEFENDANTS knew the use for which their Product was intended and represented or impliedly warranted the Product to be of merchantable quality, and safe and fit for its intended uses.

82.    PLAINTIFFS made a decision to use the Product, and reasonably relied upon the DEFENDANT and their agents to disclose known defects, risks, dangers, and side effects of the Defective Product.

83.    PLAINTIFFS had no knowledge of the falsity or incompleteness of the DEFENDANT'S statements and omissions concerning the Product when Plaintiff purchased the Product as researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce by

1  DEFENDANT.

2      84.    DEFENDANT had sole access to material facts concerning the defects, and

3  DEFENDANT knew that users, such as PLAINTIFFS, could not have reasonably discovered

4  such defects.

5      85.    By the conduct alleged, DEFENDANT impliedly warranted to PLAINTIFFS

6  that the Product was merchantable and fit for the purpose intended.

7      86.    DEFENDANT breached this warranty in importing, selling, and distributing

8  the Product in a dangerous and defective condition and in failing to warn PLAINTIFFS and

9  purchasers of the Product of these defects.

10     87.    As a direct result of the conduct of the DEFENDANT, PLAINTIFFS have

11 suffered serious and permanent physical and emotional injuries, have expended and will

12 continue to expend large sums of money for medical care and treatment, have suffered and

13 will continue to suffer economic loss, and have otherwise been physically, economically, and

14 emotionally injured.

15                            **FIFTH CAUSE OF ACTION**

16                *(Negligence/Negligent Undertaking/Enterprise)*

17     88.    PLAINTIFFS incorporate each and every allegation above as though fully set

18 forth herein.

19     89.    On information and belief, AMAZON has taken steps in the form or policies or

20 procedures to ensure the safety of products sold on its website, including through its brand

21 and/or agent Homemory.  AMAZON has done this is the form of regulations, contracts, and

22 policies with businesses selling products on its website.  According to judicial statements in

23 *Bolger v. Amazon.com, LLC*, 4th App. CA 2020, (published 8/13/2020), "Amazon maintains a

24 'robust and active process' to monitor, track, and log consumer complaints.  It analyzes these

25 complaints and determines whether to continue allowing a product to be offered for sale on

26 Amazon.  Amazon requires third-party sellers, as a contractual matter, to comply with all

27 applicable laws and regulations."  An AMAZON representative was quoted stating under

28 oath: "Amazon does everything in its power and goes above and beyond to make sure that

we're providing the best customer experience, including safe products.  And, you know, I want that for all of our customers and for myself when I buy from Amazon, so I hope people believe that."

90.    On information and belief, AMAZON requires, has required, or should require vendors on its platform, or its partners, agents or joint-venturers, to abide by safety standards, including but not limited to those provided by UL or others about replacement batteries, and warning and for securing mechanisms for products that contain button batteries.

91.    AMAZON acted as a gatekeeper to keep its customers safe and can exert pressure on upstream suppliers and agents to enhance safety.  Having accepted the role and undertaking of looking out for consumer safety, it owed a duty to exercise reasonable care to protect that undertaking.  Consumers have come to expect that they can buy safe products from AMAZON and on its platform.

92.    In this case, unfortunately DEFENDANT breached this obligation, and did not take adequate precautions to ensure the remotes, or included button batteries, sold to PLAINTIFFS were safe products, or there were proper safety precautions in place for the remotes and the batteries by themselves.  To the extent DEFENDANT had regulations and protocols to promote safety, they were not followed.  These breaches were the proximate cause of harm, and a substantial factor in bringing about the injuries, damages, and harms to the PLAINTIFFS.

93.    To be clear, this is a case about liability for selling a *Defective Product* that injured LK and members of her family.  This is *not* an action against AMAZON related to its publication of third-party content or speech on its website, as might be protected under 47 U.S.C. §230.  Nothing in this complaint is intended to make such a claim against AMAZON on these grounds and nothing in the complaint should be construed in such manner.

**SIXTH CAUSE OF ACTION**

(*Emotional Distress*)

94.    PLAINTIFFS incorporate each and every allegation above as though fully set forth herein.

95.     LK's mother suffered extreme emotional distress as a bystander having to experience the mental and emotional trauma from the injury and care of her only daughter and having firsthand experience in observing the severe injuries to her daughter. LK's mother was present at the time of the injury producing events and aware of the severe injuries being exacted against her only daughter.  In addition to the tremendous mental stress exacted from the ordeal, LK's family was financially damaged by the family emergency, loss of income, and attendant expenses and travel related to her long-term housing and care. This emotional distress was inflicted as the result of recklessness as to the likelihood of severe injury, and negligence, and was the proximate cause of damages to LK's mother.

96.     Defendant's acts and omissions directly and proximately caused LK's mother to suffer and continue to suffer anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame, such that an ordinary, reasonable person would be unable to cope with it.  Defendant's negligence was a substantial factor in causing Plaintiff's serious emotional distress.  Plaintiff seeks compensation for the damages she has received as a result of this severe emotional distress, in the past an that is reasonably likely to extend into the future.

## VI.     <u>DAMAGES & RELIEF REQUESTED</u>

97.     As a direct and proximate result of DEFENDANT'S conduct above, PLAINTIFFS, individually, and on behalf of LK., and as next-of-friend of minor Claimant, have suffered the following damages, and PLAINTIFFS pray for judgment against the DEFENDANT and an award against each of them for:

a.  General damages according to proof;

b.  Lost earnings, health care expenses paid in the past, and that will be necessary in the future;

c.  Physical pain and suffering in the past;

d.  Physical pain and suffering which will be suffered in the future;

e.  Mental anguish and emotional distress suffered in the past;

f.  Mental anguish and emotional distress that will be suffered in the future;

g. For interest from the date of accident to the time of judgment;

h. For costs of suit incurred herein;

i. For costs attendant to medical care, lodging care, travel expenses, and incidental expenses attendant to receiving medical treatment;

j. An award for punitive damages as may be permitted by law;

k. An award of reasonable attorney fees where permitted by statute;

l. A preliminary and permanent injunction restraining DEFENDANT from directly or indirectly selling the Defective Products to any other persons;

m. A preliminary and permanent injunction requiring DEFENDANT to notify all relevant consumers and recall the Defective Products and issue suitable recall notices to consumers who have purchased these Defective Products in the past; and,

n. For such other and further relief as the Court deems proper.

## VII.   <u>JURY DEMAND</u>

NOTICE is hereby given that PLAINTIFFS demand a trial by jury in the above-captioned matter.

Dated: <u>July 25, 2023</u>                              Respectfully submitted,

BUCHE & ASSOCIATES, P.C.

By: *<u>/s/ John K. Buche</u>*
John K. Buche (CA Bar No. 239477)
Byron Ma (CA Bar No. 299706)
875 Prospect St., Suite 305
La Jolla, CA 92037
Tel: (858) 459-9111
Fax: (858) 430-2426
E-mail: jbuche@buchelaw.com
E-mail: bma@buchelaw.com

*Attorneys for Plaintiffs*